# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1894

_____

Douglas R. Knutson; Linda F.       *
Knutson,                 *
                    *
      Appellants,         *
                    *  Appeal from the United States
    v.               *  District Court for the
                    *  District of North Dakota.
City of Fargo, a municipal       *
corporation,               *
                    *
      Appellee.         *

_____

Submitted: November 14, 2008
Filed: April 12, 2010

_____

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Douglas and Linda Knutson appeal from the order of the District Court dismissing without prejudice their 42 U.S.C. § 1983 suit against the City of Fargo, North Dakota.

On July 8, 2003, a cast-iron water main belonging to the City broke, flooding the Knutsons' property and damaging their house and yard. In August 2004, they filed suit against the City in state court seeking damages under state-law legal theories of inverse condemnation, intentional trespass, and negligence. The state district court

granted the City's motion for summary judgment, and the North Dakota Supreme Court affirmed. Knutson v. City of Fargo, 714 N.W.2d 44 (N.D. 2006). The Knutsons did not file a petition for a writ of certiorari in the United States Supreme Court.

On July 23, 2007, the Knutsons filed their § 1983 complaint against the City in federal court, alleging violations of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Without filing an answer, the City moved to dismiss under Rule 12(c) of the Federal Rules of Civil Procedure (motion for judgment on the pleadings after the pleadings are closed). Applying the Rooker-Feldman[1] doctrine, the District Court determined that it lacked subject-matter jurisdiction over the Fifth and Fourteenth Amendment claims. Alternatively, the court concluded that each of the constitutional claims was barred under issue or claim preclusion. The court dismissed the complaint without prejudice and denied the City's motion as moot. The Knutsons appeal.

We review de novo the District Court's legal conclusions regarding its own subject-matter jurisdiction. See Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009). Likewise, we review de novo the preclusive effects of a previous state-court judgment on this federal case. See St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., 457 F.3d 766, 770 (8th Cir. 2006) ("The application of res judicata, or claim preclusion, is reviewed de novo."); Boudreau v. Wal-Mart Stores, Inc., 249 F.3d 715, 719 (8th Cir. 2001) ("A trial court's determination as to whether the legal prerequisites for issue preclusion have been met on the facts before it is a mixed question of law and fact, subject to de novo review by this court.").

---

[1]Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

For their first issue on appeal, the Knutsons argue that none of their federal constitutional claims is barred by the Rooker-Feldman doctrine.  We agree.

Congress reserved review of state-court final decisions to the United States Supreme Court, and such appeals cannot be taken in the lower federal courts.  28 U.S.C. § 1257.  As a consequence, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights," a rule known as the Rooker-Feldman abstention doctrine.  Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994).  In recent years, the Court has expressed some disapproval of the lower federal courts' extension of the doctrine to "overrid[e] Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and supersed[e] the ordinary application of preclusion law."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005).  Indeed, the Supreme Court has observed that Rooker and Feldman were the only two cases in which the Court applied the doctrine to conclude there was no federal jurisdiction.  Id. at 287; Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam).  One Justice has gone so far as to declare the doctrine "interred" as a result of the unanimous opinion in Exxon Mobil.  Lance, 546 U.S. at 468 (Stevens, J., dissenting).  At the very least, we are reminded of the narrow application of the rule, "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil, 544 U.S. at 284.  "Rooker-Feldman is not simply preclusion by another name."  Lance, 546 U.S. at 466.

In this case, the Knutsons are not "complaining of an injury *caused by* the state-court judgment and seeking review and rejection of that judgment."  Exxon Mobil,

544 U.S. at 291 (emphasis added).[2]   The injury they complained of, and sought compensation for, in the District Court—damage to their property—was the result of the alleged action (or inaction) of the City of Fargo, not a consequence of the state-court judgment wherein that court declined to grant the requested remedy (money damages) for the injury.  Cf. Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc., 487 F.3d 1154, 1157 (8th Cir.) ("[T]he alleged injury for which [plaintiff] seeks redress . . . stems directly from the state court judgment itself rather than from some separate injury caused by the defendant."), cert. denied, 552 U.S. 991 (2007).  We hold that the District Court erred in concluding that it lacked subject-matter jurisdiction under Rooker-Feldman to decide the Knutsons' Fifth and Fourteenth Amendment claims.[3]

But that does not mean that the District Court should have reached the merits of the Knutsons' claims, for to do so would have violated the Full Faith and Credit Act.  Under 28 U.S.C. § 1738, the federal courts are required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982).  Full faith and credit comprises the law of issue and claim preclusion and "is not a jurisdictional matter."  Exxon Mobil, 544 U.S. at 293.  This brings us to the Knutsons' second issue on appeal, which challenges the District

[2]As we explore in detail in our discussion of the preclusion doctrines, infra at 9–10, the Knutsons do seem to make a run at claiming that their federal constitutional rights were violated by the North Dakota Supreme Court's judgment itself, maintaining in their Rooker-Feldman argument that it was not until that court's decision came down that they realized the City was acting under color of law, and so they did not have a cause of action under § 1983 until then.  See Br. of Appellants at 41–42.  If we were to countenance this rather absurd contention (after all, they sued the City as a governmental entity), the Knutsons' claims *would* all be Rooker-Feldman barred.

[3]The District Court did not consider the City's Rooker-Feldman argument as to the Knutsons' Fourth Amendment claim.

Court's application of preclusion principles to their case. The court held that their Fifth Amendment claim was barred by issue preclusion and their Fourth and Fourteenth Amendment claims were barred by claim preclusion. We agree that the Knutsons are foreclosed by the full-faith-and-credit statute from litigating their claims in federal court.

Under issue preclusion, previously known as collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). Under claim preclusion, also called res judicata, "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." Id. According to the terms of the full-faith-and-credit-statute, we apply state preclusion law in our analysis. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). In North Dakota, the preclusion doctrines operate "to promote the finality of judgments," resulting in increased certainty for litigants and conservation of judicial resources. Ungar v. N.D. State Univ., 721 N.W.2d 16, 20 (N.D. 2006).

Under North Dakota law, issue preclusion will apply in a case like this one if (1) the issue decided in the state-court adjudication is identical to the one presented in federal court, (2) the state-court judgment on the merits is final, (3) the party against which the doctrine is invoked in the federal action was a party in the state case, and (4) that party was given a fair opportunity in state court to be heard on the issue. See Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1475 (8th Cir. 1994). The rule "forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action." Ungar, 721 N.W.2d at 21. The Knutsons contend that the issues are not identical and that they were not given a fair opportunity to be heard in the state court.

In their inverse-condemnation claim in state court, the Knutsons sought "just compensation" for the "taking or damage" of their property under Article 1, Section 16 of the North Dakota Constitution. State Compl. at 3. In federal court, the Knutsons sought "just compensation" for the "taking" of their property under the Fifth Amendment to the United States Constitution. Federal Compl. at 5. As relevant here, the North Dakota Constitution declares that "[p]rivate property shall not be taken or damaged for public use without just compensation." Under the Fifth Amendment, "nor shall private property be taken for public use, without just compensation." The language in the two constitutions is nearly identical, such that the North Dakota Supreme Court "has looked to both state and federal precedents in construing takings claims under the state constitution, and [its] cases on inverse condemnation under the state constitution bear some similarities to the federal analysis." Wild Rice River Estates, Inc. v. City of Fargo, 705 N.W.2d 850, 856 (N.D. 2005) (citations omitted), cert. denied, 547 U.S. 1130 (2006). We conclude that the issue sought to be litigated in federal court—the City's alleged taking of private property without just compensation—was "necessarily litigated . . . and decided" by the state courts in their consideration of the Knutsons' inverse-condemnation claim—where they sought compensation from the City for the taking of their property. Ungar, 721 N.W.2d at 21; see Knutson, 714 N.W.2d at 47–50. Indeed, the Knutsons' takings claim, although ultimately rejected by the state courts, may have benefitted from an analysis more charitable to their position than that claim would have been entitled to in federal court: the "state constitutional provision is broader in some respects than its federal counterpart because the state provision 'was intended to secure to owners, not only the possession of property, but also those rights which render possession valuable.'" Wild Rice River Estates, 705 N.W.2d at 856 (multiple internal quotation marks and citations to quoted cases omitted).

The Knutsons argue that because they raised only issues of state law in state court, and because the state court only considered state law, they "reserved" their Fifth Amendment issue for federal court review. Br. of Appellants at 62–64. This is the

rationale for their position that they were denied a fair opportunity to be heard. On a related note, the Knutsons contend that they could not have brought the federal constitutional claim in state court because their Fifth Amendment rights were not violated, and their federal takings claim therefore was not ripe for adjudication, until the North Dakota Supreme Court denied them just compensation for the damage to their property.[4] Id. at 65.

Fifth Amendment takings claims brought in federal court have a state exhaustion requirement. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985). In San Remo Hotel, L.P. v. City & County of San Francisco, California, the Supreme Court was asked to decide whether it "should create an exception to the full faith and credit statute, and the ancient rule on which it is based, in order to provide a federal forum for litigants who seek to advance federal takings claims that are not ripe until the entry of a final state judgment denying just compensation." 545 U.S. 323, 337 (2005).

The Court noted that property owners who brought a state-court takings claim were "certainly entitled to reserve" federal claims under Supreme Court precedent. Id. at 338. But because of the interests in avoiding piecemeal litigation and giving full faith and credit to state-court judgments, the property owners ran the risk of being precluded from having those claims heard in federal court, as there is no "right" to have federal claims decided by a federal court. Id. at 342. In concluding that there is no exception to the full-faith-and-credit preclusion doctrines for takings claims, notwithstanding the state-court exhaustion requirement, the Court declared, "[W]e are

_____

[4]This ripeness argument is advanced in greater detail in the Knutsons' brief under their Rooker-Feldman discussion. See Br. of Appellants at 39–41. Because it is actually a preclusion issue, we address it here.

not free to disregard the full faith and credit statute solely to preserve the availability of a federal forum." Id. at 347. As a result, "a significant number of plaintiffs will necessarily litigate their federal takings claims in state court," id. at 346, but such is a consequence of Congress's express concern for "the weighty interests in finality and comity," id. at 345.

The Knutsons attempt to distinguish San Remo Hotel based on its facts, noting that the state court in that case applied federal law to the takings claim that the plaintiffs had tried to reserve, whereas the state courts in their case did not even mention federal law when deciding their takings claim. But "the question is whether the state court *actually decided* an issue of fact or law that was necessary to its judgment." Id. at 342 (emphasis added). The state-law takings claim adjudicated in the North Dakota state courts was "the same *substantive* issue[]" as the Fifth Amendment takings claim they now say they "sought to reserve." Id. at 346 (emphasis added). The North Dakota state courts were fully competent to adjudicate the Knutsons' Fifth Amendment claim, see id. at 347, and the Knutsons' attempted reservation of the claim for adjudication in federal court was ineffective under San Remo Hotel.

We hold that the doctrine of issue preclusion applies to the Knutsons' Fifth Amendment claim and that the claim was therefore properly dismissed.

As for the doctrine of claim preclusion, under which the District Court rejected the Knutsons' Fourth and Fourteenth Amendment claims, the North Dakota Supreme Court has declared this to be the "more sweeping" of the two preclusion rules. Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D. 1992). Under state law, the Knutsons' federal-court claims are precluded if they "were raised or *could have been raised*" in the state-court proceeding, where the parties were the same and the judgment is final. Id. (emphasis added).

For their Fourth Amendment claim, the Knutsons asserted that "the surge of pressurized water" from the broken water main resulted in a seizure of their property and interfered with their right to be secure in their house and effects. Federal Compl. at 4. Their Fourteenth Amendment claim alleged denial of substantive and procedural due process and equal protection as a result of the City's refusal to pay the damages they incurred when the water main ruptured.[5] The Knutsons cite City of Fargo municipal policies regarding repair and replacement of water mains and discretionary immunity statutes, claiming that those "overly broad" and "unreasonable" policies and laws resulted in the alleged violations of their federal constitutional rights. Id. at 7.

The Knutsons' federal claims could have been raised in the state-court action. They "are based on the same underlying factual circumstances"—the break of a water main owned and maintained by the City and the City's failure to pay for the resulting damages. Lucas v. Porter, 755 N.W.2d 88, 97 (N.D. 2008). It is of no consequence that their state-court suit raised state-law causes of action, while they are seeking in federal court to raise issues of United States constitutional law. Claim preclusion applies even though the federal "claims are based on different legal remedies or theories." Id. On these facts, the Knutsons' Fourth and Fourteenth Amendment claims are barred under claim-preclusion rules.[6]

In their challenge to the District Court's claim-preclusion decisions, the Knutsons contend that they did not know and could not have known that they had a federal civil-rights action until the state supreme court rendered its decision. See, e.g., Br. of Appellants at 52 ("The 'color of law' element was missing until the Supreme

_____

[5]Of course, the Fourteenth Amendment is also invoked to make the Fourth and Fifth Amendments applicable to the City.

[6]And if we are mistaken as to the issue-preclusive effect of the state-court judgment on the Knutsons' federal takings claims, that Fifth Amendment claim is unquestionably barred by claim preclusion.

-9-

Court of North Dakota determined that the Knutsons did not have a viable trespass claim '[b]ecause the City had the authority to lay the water main in 1950.'"); id. at 57 ("[T]he Knutsons' [sic] assert that governmental immunity was unconstitutionally applied to their factual situation" by the state court.); id. at 59–60 ("When the Knutsons initiated their former state action, they could not reasonably anticipate that the state courts would acquiesce in the City of Fargo's policies that deprive the Knutsons of their constitutional rights."). If the suggestion is that the Knutsons were unaware of the City's ownership and responsibilities vis-à-vis the City's water mains, this position defies common sense. Indeed, they sued the City of Fargo in the state-court suit. And if they really wish to insist that the North Dakota Supreme Court's decision in Knutson is "at odds with" the United States Constitution, id. at 49, then their recourse was to file a petition for certiorari in the United States Supreme Court challenging the state-court judgment on federal constitutional grounds, see D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983). Were we to give credence to their claim that the state-court judgment itself violated federal constitutional law, their federal-court action would most certainly be Rooker-Feldman barred.

For their final issue on appeal, the Knutsons urge us to determine that the District Court erred when it relied on a statement their counsel made during oral argument before the North Dakota Supreme Court. In determining that the Knutsons' "Fourteenth Amendment claims were readily foreseeable and should have been raised in the underlying state court action," the District Court noted that "[c]ounsel for the Knutsons conceded during the [North Dakota] Supreme Court oral argument that he found not one case in which one act of 'nuisance' constituted inverse condemnation." Order at 6–7. We do not think that the District Court was using this comment as some sort of "evidentiary admission . . . as to matters of federal law" as the Knutsons maintain. Br. of Appellants at 68. In any event, we have reviewed the court's decision de novo and have not relied on the comment in question in holding that the Knutsons' Fourteenth Amendment claim is foreclosed by claim preclusion. But we see no reason why the District Court, like this Court, could not take judicial notice of the publicly

-10-

available state-court argument, particularly where the issue at hand is possible preclusion of a federal claim as a result of those same state-court proceedings. Cf. Kent v. United of Omaha Life Ins. Co., 484 F.3d 988, 994 n.2 (8th Cir. 2007) ("[W]e may take judicial notice of other judicial opinions, and the earlier proceedings are relevant in deciding a claim of issue preclusion."); see also Pins v. State Farm Fire & Cas. Co., 476 F.3d 581, 585 (8th Cir. 2007) (granting "motions to take judicial notice of unpublished state court proceedings and orders").

The judgment of the District Court is affirmed, except that the dismissal shall be modified to be with prejudice.

_____